# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

|                                   |     |                              |
| --------------------------------- | --- | ---------------------------- |
| **UNITED STATES OF AMERICA**,     | )   |                              |
|                                   | )   |                              |
|                                   | )   | Case No. 1:05CR00030-2       |
|                                   | )   |                              |
| v.                                | )   |                              |
|                                   | )   |                              |
| **JONATHAN CRAIG SINGLETON**,     | )   |                              |
|                                   | )   | By: Michael F. Urbanski      |
| Defendant.                        | )   | United States Magistrate Judge |
|                                   | )   |                              |

## Report and Recommendation

Defendant Jonathan Craig Singleton ("Singleton"), a federal inmate proceeding pro se, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255. Dkt. # 312. The government filed a Motion to Dismiss, and defendant has responded. Dkt. ## 325, 327. Additionally, the court held evidentiary hearings on March 10 and June 4, 2010. Further, the parties submitted post-hearing briefs. Upon review of the record and the extensive testimony, the undersigned recommends that Singleton's § 2255 motion be **DENIED**, that the government's Motion to Dismiss be **GRANTED**, and that this matter be **STRICKEN** from the active docket.

## I.

Defendant Jonathan Craig Singleton was indicted in this district on April 19, 2005. The multi-defendant, single count indictment charged that Singleton and others participated in a conspiracy to possess and distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of Title 21, U.S.C.A. § § 846, 841 (a)(1) and (b)(1)(A).

Singleton pleaded not guilty. Shortly before trial, Singleton rejected a plea agreement. Singleton was tried before a jury with his then wife, Debbie Singleton ("co-defendant"), on January 4-6, 2006. Debbie Singleton was represented by separate counsel, Evans Prieston. Defendant made oral motions for a mistrial on each day of trial. The court denied those motions. On January 6, 2006, the jury found both Singleton and co-defendant guilty.

On February 6, 2006, defendant moved to set aside the jury verdict. He argued that testimony about a prior attempted drug purchase was inappropriately admitted. The court denied that motion on March 20, 2006 and two days later sentenced Singleton to 360 months imprisonment, ten years of supervised release, a $2,000 fine and a $100 special assessment.

Singleton appealed to the United States Appeals Court for the Fourth Circuit on March 28, 2006. Singleton challenged his conviction, arguing that the trial court inappropriately admitted hearsay statements made by co-defendant and testimony from Detective Robert Lincoln as to prior bad acts. The Fourth Circuit consolidated Singleton's appeal with that of co-defendant. On July 9, 2007, the Fourth Circuit affirmed Singleton's sentence. United States v. Singleton, 232 F.App'x 313 (4th Cir. 2007) (unpublished), cert. denied, 552 U.S. 1031 (2007).

Singleton timely filed a § 2255 motion and an accompanying Memorandum of Facts. He claimed that:

1.    trial counsel provided ineffective assistance of counsel by allegedly (a) failing to secure a plea agreement, (b) failing to recommend a plea agreement, (c) advising Singleton of the wrong statutory range of punishment; and (d) improperly pursuing particular lines of questions and objections during trial;

2.    admission of Detective Lincoln's testimony violated Singleton's rights because it constituted double jeopardy and prosecutorial misconduct;

3.      trial counsel was ineffective on direct appeal for (a) challenging the admission of evidence as prior bad acts; (b) failing to get defendant's permission to appeal; and (c) not promptly notifying defendant of the denial of his appeal;

4.      the trial court erred in allowing the testimony of Drug Enforcement Administration ("DEA") Agent Vainauska, as such testimony violated Rule 11 of the Federal Rules of Criminal Procedure and Singleton's Fifth Amendment right against self-incrimination.

## II.

Over the course of the evidentiary hearing, the undersigned heard testimony from Singleton, Singleton's trial counsel Michael Bragg, co-defendant's counsel Evans Prieston, and DEA Agent Brian Snedeker.

Testimony of Trial Counsel Michael Bragg

Michael Bragg represented Jonathan Singleton at trial and on direct appeal. During Bragg's representation of Singleton, the defendant was held in custody at the New River Regional Valley Jail and the Bristol City Jail. Dkt. # 365 at 21-22.

Bragg testified that the government sent Bragg a written offer to enter into a plea agreement on November 29, 2005. Id. at 16. The plea agreement required that both Jonathan and Debbie Singleton plead guilty. Id. at 17-18. Bragg's phone log reflected that he had a short phone conference with Prieston the day that it was received. Id. at 17. Bragg's phone logs also noted two phone calls with Singleton, each at 0.6 of an hour. Id. at 21. Bragg also testified that he took part in a two and a half hour long conference with Singleton on December 14, 2005. Id.

Bragg said that he did not send Singleton a letter including the plea agreement. Id. at 34. However, he said he explained that the plea agreement was conditioned on both Singleton and his wife pleading guilty. Id. at 23. Bragg testified that Singleton had "very little interest in the

plea." Id.  He also noted that Singleton "always maintained his absolute innocence of the charges," yet also indicated he might have some information that would entitle him to a substantial assistance motion.  Id. at 23-24.  Bragg further testified that he informed Singleton that he faced a maximum penalty of life imprisonment and a mandatory minimum of twenty years if convicted.  Id. at 24-25.  Bragg acknowledged that "I did not talk to him in as great of detail [about the offer] as I have in other cases, which culminated in a plea, because he was not interested in the plea."  Id. at 24.  However, Bragg further testified that:

> I advised him that under the plea, if the – that the plea did a couple of things for him: One, it would reduce the mandatory minimum from 20 years to 10 years.  However, based on his criminal history and the offense level that the government was willing to stipulate, if everything remained the same there, out of the PSI [pre-sentence investigative report], I told him that I anticipated he could be looking at 15 years or so – or a little bit more than that.
>
> I also indicated I was concerned that – based on his history, that while the plea agreement did away with the mandatory minimum, I could see, based on the nature of the offense – the mailing, through a pretty intricate system, of methamphetamine to southwest Virginia – and his criminal history, I could see Judge Jones going to the upper ends of the sentencing guidelines and possibly even going beyond the sentencing guidelines in his case, so that 20 years could still be a possibility.

Id. at 24-25.

Bragg stated that both Jonathan Singleton and Evans Prieston said Debbie Singleton refused to enter into the plea agreement.  Id. at 25.  Because the plea offer required that both defendants plead guilty, this would have prevented Jonathan Singleton from accepting the agreement.  Additionally, Bragg testified that Singleton, while maintaining his innocence, "indicated to me that the best that he would be willing to do – or I guess from his point of view the worst he would be willing to do is if I could work out some agreement that he got a sentence around 10 years, that he might consider that."  Id. at 26.  In approaching the government with

such a request, Bragg stated that "[i]t was a very quick discussion.  The government said no, that's not going to happen."  <u>Id.</u> at 26.

According to Bragg, on January 3, 2006, he took part in a joint conversation with Singleton, Prieston and co-defendant at the Bristol Jail for approximately three hours and forty minutes.  <u>Id.</u> at 44-45.  Bragg testified that both he and Prieston believed that it was in the interest of the defendants to plead guilty, and that they sought the joint meeting in order to discuss this with them.  <u>Id.</u> at 44.

In his discussions with the government, Bragg also sought to have the condition requiring both defendants to plead guilty removed, so that Singleton could have the option to plead.  <u>Id.</u> at 26.  Bragg stated that the government initially declined to withdraw that condition, though it ultimately withdrew it the morning of trial.  <u>Id.</u>

Bragg testified that after the government removed the restriction on pleading guilty, he talked to Singleton for ten to fifteen minutes:

> From the best of my memory, I told him I thought it was in his best interest to take the plea. I thought that the government had a compelling case against him. . . . [O]ne of his continuing concerns was that his wife was going to trial and he did not want to abandon her or go to trial by herself.

<u>Id.</u> at 27.  Bragg stated that because of the timing shortly before trial that Singleton "felt like he was pushed."  <u>Id.</u> at 59.  Bragg asked Singleton how interested Singleton was in the plea agreement, because Bragg would ask for more time from the court if defendant sincerely wanted to consider the offer.  <u>Id.</u> at 59-60.  Bragg testified that Singleton again said that he was not interested in a plea agreement that would carry a sentence of greater than ten years.  <u>Id.</u> at 27.  Bragg emphasized that he told Singleton the morning of trial that "if he went to trial with the

information that was filed on December 13th . . . he was facing a mandatory minimum of 20 years." Id. at 61.

Bragg testified that Singleton made it clear he wished to appeal. Id. at 69-70. Bragg filed an appeal on behalf of Singleton that was denied. Id. at 29. Bragg admitted that he failed to timely notify Singleton that his appeal had been denied. Id. However, he testified that he filed for certiorari, noting that "[u]nless I'm told otherwise on a CJA [court appointed] case, I will file a petition for certiori [sic] to – if nothing else, to preserve the issues for – for the defendant." Id. at 29-30. Bragg chose not request en banc review, because he did not believe that the Fourth Circuit's decision satisfied the requirements for such review. Id. at 32. The panel decision was three to zero and there were no conflicting decisions from the circuit. Id.

The government recalled Bragg at the second day of the evidentiary hearing on June 4, 2010. Bragg then testified as to a meeting he had not previously remembered. Dkt. # 371 at 53. He stated that on November 30, 2005, the day after he received the plea agreement, he met with both Jonathan and Debbie Singleton, while also talking over the phone with Evans Prieston. Id. at 50, 53; Exhibit 14 to Dkt. # 367. Debbie Singleton refused to consider the plea. Dkt. # 371 at 53-54. Bragg testified that at that time, Jonathan Singleton might have considered the offer, but did not want to do anything adverse to his wife. Id. at 54.

On June 4, 2010, Michael Bragg further testified that after he filed an appeal in the Fourth Circuit, he informed Singleton of the filing and provided Singleton a copy. Id. at 59. Bragg could not recall whether Singleton specifically asked him to file it. Id. at 59.

Testimony of Jonathan Singleton

Jonathan Singleton testified via video conference on March 10, 2010.  Singleton stated that trial counsel "told him me vaguely about a plea agreement, but he didn't get into detail.  I asked him if I could see the plea agreement or if he could send it to me, but he never did.  I never received one."  Dkt. # 365 at 84.  Singleton testified that after that short conversation, he and Bragg did not discuss a plea agreement again until the morning of trial.  Id. at 85.  He also testified that one day prior to trial, he met with Bragg, co-defendant and Evans Prieston.  Id.  Singleton claimed that Bragg did not talk much at that meeting.  Id.  Singleton stated he wished to plead guilty, so he and Prieston attempted to convince Debbie Singleton to plead guilty.  Id. at 85-86.

Singleton additionally testified that the morning of trial, Bragg informed him that the condition requiring that both Jonathan and Debbie Singleton plead guilty had been lifted.  Id. at 86.  He testified that:

> I asked him if I could have a moment to review this plea, to see this plea, to -- you know, to weigh my options.  And he basically said "There is no time."  Then I asked him, "Well, you know, what is your opinion?"  And then he told me my best option -- he thinks my best option was for me to go to trial.
>
> And then I asked him, "On this plea that you were talking about, I can't review it or see it, can you tell me something?"  He said, "Well, you will get approximately 20 years if you accept this plea."  And then that's when I asked him, "Well, what happens if we go to trial?"  And he said, "You'll get about the same."

Id. at 86-87.  Singleton testified that he was never presented with a calculation of the sentences he could potentially receive.  Id.  He repeated that he was never given an actual copy of the plea agreement.  Id. at 88-89.

On cross-examination, Singleton would not state unequivocally that he would have chosen to plead guilty in exchange for a sentence of twenty years. Id. at 98. Singleton denied telling Bragg that he would only accept a plea entailing a sentence of ten years. Id.

Singleton also claimed that he was not aware that a direct appeal had been filed on his behalf until after he learned that it had been denied. Id. at 91, 93. Singleton also testified that he filed a motion for a new attorney at one point in time because Bragg did not return his phone calls and letters, and would not visit him. Id. at 94-95.

At the second day of the evidentiary hearing, Singleton remembered a meeting of which he previously had no recollection. He testified that during a November 30, 2005 meeting, Debbie Singleton refused to plead guilty. Dkt. # 371 at 64. Jonathan Singleton stated that he had attempted to convince her to plead guilty because he wanted to plead guilty. Id. He further said that Michael Bragg did not give advice during the meeting, but afterwards opined that Debbie Singleton was making an "educated" decision by proceeding to trial. Id.

Singleton claimed that he asked for his legal materials in order to file an appeal, but never received them. Id. at 65-66. He only learned of his appeal two weeks prior to the deadline for certiorari. Id. at 66. On cross-examination, Singleton was unable to identify the grounds he wished had been raised on direct appeal. Id. at 68.

Testimony of DEA Special Agent Brian Snedeker

At the evidentiary hearing on June 4, 2010, DEA Agent Brian Snedeker testified that he was assigned to the joint prosecution of Jonathan and Debbie Singleton. Dkt. # 371 at 4. Snedeker stated that he transported Debbie Singleton to the United States Attorney's Office in Abingdon, to take part in an unusual joint meeting with Jonathan Singleton and counsel, Michael

Bragg.  Id. at 6-7.  The purpose of the meeting was to "hopefully get them to sign plea agreements so we could avoid going to trial."  Id. at 15-16.  This meeting took place on November 30, 2005.  Exhibit 12 at Dkt. # 367.

Testimony of Evans Prieston

Evans Prieston testified on June 4, 2010 that during his representation of Debbie Singleton, he took part in multiple joint meetings with Jonathan Singleton.  Dkt. # 371 at 22-23.  Prieston confirmed that both defendants had to plead guilty in order to obtain the plea agreements.  Id. at 25.  "My recollection," he stated, "was that Mr. Singleton was looking at at least 20 years in prison.  That was being communicated."  Id.  Prieston stated that early on the focus was on preparing a proffer, but as the trial approached, they began to focus on preparing evidence for trial.  Id.  Prieston wanted Jonathan Singleton to plead guilty so that Debbie Singleton could plead guilty and also be eligible for a substantial assistance motion.  Id. at 26.  However, Jonathan Singleton was not interested in the plea agreement that was offered.  Id.

Prieston also acknowledged that he took part in a joint meeting with Michael Bragg, Jonathan and Debbie Singleton on January 3, 2010.  Id. at 28.  During that meeting, his goal was to try to persuade Debbie Singleton to plead guilty, and he felt that she would if Jonathan Singleton would.  Id.  at 29-30.  However, Jonathan Singleton risked a great deal of prison time even under a plea agreement and as such, he was unwilling to plead.  Id. at 30.

In Prieston's opinion, Michael Bragg "didn't project an attitude that really the trial was going to be much more harmful than a plea" to Jonathan Singleton.  Id. at 32.  Prieston testified that:

> I was frustrated by [that], I can tell you personally, because I'm just trying to get Debbie [Singleton] to get the benefit of what I knew would be a substantially less

sentence than she ended up [with] at trial, that Mr. Singleton wasn't being pressed more to take a plea.

Id. at 33.

Prieston stated that either the day before trial or the morning of trial, the government removed the condition requiring both defendants had to plead guilty in order to receive the benefit of the plea agreement. Id. By Prieston's account, the deal was "still very speculative" and "it was hard to give the client of any assurance of an amount of years in the guidelines." Id. at 34. He thought that they may have discussed sentencing ranges for Jonathan Singleton. Id.

The morning of the trial, Debbie Singleton decided not to take the plea agreement and Jonathan Singleton said he would. Id. at 34-35. Prieston also saw a benefit to this, in that if Debbie Singleton insisted on going to trial, he could attempt to paint Jonathan Singleton as more culpable. Id. at 36. There was a great deal of time pressure, in discussing these options. Id. Prieston testified that Jonathan Singleton had separate conversations with his counsel after he expressed interest in pleading guilty. Id. at 43. Additionally, he talked some with Debbie Singleton, who was then very emotional and crying. Id. at 43-44. Singleton then decided not to plead guilty, but Prieston was not privy to that conversation. Id.

### III.

To state a claim for relief under § 2255, a federal defendant must show that one of the following occurred: (1) that his or her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) "or that the court was without jurisdiction to impose such a sentence"; (3) or that "the sentence was in excess of the maximum authorized by law"; (4) "or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In a § 2255 motion,

the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam). A court may rule on the basis of the filings if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . ." 28 U.S.C.A. § 2255(b).

Claims regarding trial level errors that could have been, but were not raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice resulting from such errors, or demonstrates that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. <u>See</u> <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." <u>Id.</u> at 493. Alternatively, Singleton can satisfy the "miscarriage of justice" prong of the test by demonstrating actual innocence by clear and convincing evidence. <u>Id.</u> Similarly, once an issue has been fully considered and decided by the court of appeals, a defendant cannot re-litigate that issue before the district court under § 2255. <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976).

Ineffective assistance of counsel may be grounds for vacating a verdict or sentence. To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, Singleton must meet a two-prong standard. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, he must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. <u>Id.</u> at 687-88. In making such a case, a defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending

criminal cases.  Id. at 689.  Second, he must show prejudice, i.e. "a reasonable probability" that but for counsel's errors the outcome would have been different.  Id. at 694-95.

The Strickland performance and prejudice test is applicable for counsel on the appeals level as well.  Murray  v. Carrier, 477 U.S. 478, 488 (1986).  With regard to appellate counsel, there is no constitutional duty to raise on appeal every non-frivolous issue requested by defendant "if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983).

Counsel competence in the stages prior to the entrance of a guilty plea, including stages at which a plea bargain might have been negotiated, are subject to the Strickland reasonableness and prejudice standards.  Fields v. Maryland, 956 F.2d 1290, 1296 (4th Cir. 1992).  However, "[a] defendant has no constitutional right to a plea bargain."  Id. at 1297 n.19.

Because the parties rely on materials outside of the pleadings, the government's motions is treated as one for summary judgment.  A motion for summary judgment may be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986).

### 1. Ineffective Assistance of Counsel Pre-trial and at Trial

#### A. Failure to Secure Plea Agreement

Singleton claims his counsel was ineffective for failing to secure a plea agreement, given the weight of evidence against Singleton.  Defendants have no constitutional right to a plea agreement, though counsel conduct in plea negotiations is subject to the ineffective assistance of counsel standard.  Fields, 956 F.2d at 1297 n.19.  As is explained in the following subsections,

Michael Bragg communicated a plea offer to Singleton, sought a more favorable offer and was rebuffed by the government. Singleton has not carried his burden in showing that Bragg acted unreasonably. As such, the undersigned recommends that this claim and those that follow be dismissed.

### B. Advice Regarding Whether to Plead Guilty

Singleton next argues that counsel knew Singleton wished to plead guilty, but "didn't notify the defendant of the existence of one [offer] until 5 minutes prior to trial . . . ." Attachment 1 to Dkt. # 312 at 5. Singleton further claims that counsel advised defendant that he would likely be acquitted, and as such should not accept the plea agreement.

Singleton's claims are demonstrably untrue. The testimony of Bragg, Prieston, DEA Agent Snedeker and even Singleton all confirm that there were multiple meetings regarding the plea offer between November 29, 2005 and trial. Prisoner transportation records and Bragg's own calendar confirm that a day after the plea agreement was faxed to Bragg's office the defendants had a meeting to discuss the plea offer. Exhibits 12, 14 at Dkt. # 367. Additionally, Prieston, Bragg and documentary evidence indicate that Singleton took part in a January 3, 2005 meeting in which the parties discussed the potential agreement. To the degree that Singleton's testimony contradicts the testimony of Prieston, Bragg and Snedeker, as well as the documentary evidence, Singleton's testimony simply lacks credibility.

Singleton has attempted to shoehorn an additional argument into his claims through his post-evidentiary hearing brief.[1] Specifically, Singleton claims that Bragg denied him of the

---

[1] To the degree that this is an independent claim, it is procedurally inappropriate as it was not raised in the § 2255 motion, at the evidentiary hearing or in a motion to amend. Singleton's claim regarding conflicts of interests is further impeded by the fact that he fails to identify any actual conflicts of interest. In order to show ineffective assistance of counsel involving a conflict of interest, petitioner must show that an actual conflict of interest arose and that the

opportunity to make a fully informed decision regarding the plea agreement because Bragg did not review all of the waivers that accompanied the plea agreement.

Bragg's testimony that Singleton rejected the plea agreement because of the prison sentence it carried is credible. Singleton's testimony, full of self-contradictions and selective recollection, is not. Thus, the undersigned concludes that Singleton rejected the plea agreement because it carried the potential for too much jail time. Had Singleton chosen to plead guilty the waivers would have become relevant, but as Singleton did not, they were not.

Trial counsel's efforts were reasonable, particularly in the face of Bragg's credible testimony that Singleton was not interested in pleading guilty unless he would receive a ten year sentence. Accordingly, the undersigned recommends that Singleton's claim that counsel was ineffective for failing to inform him of the government's plea offer until the eve of trial be dismissed.

### C. Advice Regarding Maximum Sentence

Singleton further claims that counsel gave him inaccurate information about the penalties he could receive that made it difficult for Singleton to evaluate the risks of going to trial as opposed to accepting a plea agreement that likely carried twenty years. Singleton additionally claims that his decision to plead guilty was the product of ineffective assistance of counsel because upon presenting Singleton with the government's offer for a plea agreement:

---

conflict adversely affected counsel's performance. United States v. Swartz, 975 F.2d 1042, 1047-48 (4th Cir. 1992).
Michael Bragg's decision not to discuss the waivers associated with the plea agreement was reasonable given that Singleton declined to enter into the plea agreement and thus was not subject to the waivers. Similarly, the government did not take part in a conflict of interest by proposing a plea agreement containing widely utilized waivers. Moreover, even if there were a conflict of interest, Singleton was never harmed by it because he did not plead guilty. Accordingly, the undersigned recommends that this claim be dismissed.

> counsel advised Movant [Singleton] that it didn't matter whether he
> accepted the offer or not because in the result of a guilty verdict at trial,
> Movant would receive 20 years anyway. Counsel advised that
> proce[e]ding to trial was the best option as he (Counsel) believed that he
> would certainly win a "not guilty" verdict. Movant proceeded to trial on
> advice of his counsel, lost, and received a 30 year sentence as opposed to
> the 20 year maximum that Counsel had earlier stated.

Attachment to Dkt. # 312, at 1. Singleton additionally complained at the evidentiary hearings that he was never given a physical copy of the plea agreement, or presented with calculations regarding his potential sentence.

Over all, Singleton's testimony lacks credibility. As noted, at the two evidentiary hearings, Singleton had an incomplete memory of events and he frequently contradicted himself. In contrast, at the evidentiary hearing, Bragg testified that he informed Singleton of the applicable minimum and maximum sentences and that he also attempted to give Singleton an idea of the sentences he might receive under the sentencing guidelines. Bragg's testimony was partially corroborated by the testimony of Evans Prieston. As such, the undersigned concludes that Singleton was properly apprised of the statutory range of imprisonment that he faced.

Additionally, the undersigned finds that Bragg's advice regarding whether to take the plea agreement was reasonable. Bragg testified that he advised Singleton that a plea agreement would be in his best interest but that Singleton could receive over twenty years in jail under a plea agreement because of his criminal history and the nature of the crime. Counsel owe clients the benefit of their informed advice. Judges are not bound by plea agreements and they generally have discretion to hand down sentences that are lengthier than those contemplated by plea agreements. There is no requirement that defendants be provided with physical copies of plea agreements or with actual calculations of potential sentencing ranges. Bragg clearly

- 15 -

discussed the potential sentencing consequences of both pleading guilty and going to trial. He provided Singleton with sufficient information to allow him to make an informed decision.

Bragg's testimony is again, largely corroborated by that of Evans Prieston. However, Prieston indicated that he believed Bragg should have pushed the plea agreement harder. This difference is one of opinion and not a matter of ineffective assistance of counsel. As Singleton's counsel, Bragg was uniquely positioned to consider Singleton's interests in a way that Prieston was not. Indeed, Prieston acknowledged that part of his enthusiasm for the plea agreement stemmed from his belief that it would benefit his client. Fundamentally, Singleton wanted a lower sentence than he could get through a plea agreement and he chose to go to trial. That this gamble was not successful does not mean that it was the result of ineffective assistance of counsel. Accordingly, the undersigned recommends that this claim too be dismissed.

### D. Alleged Deficient Trial Performance

Singleton claims that counsel was unprepared at trial, offering a "fly-by-night" cross-examination, pitting a witness against her husband and making "nonsensical objections". Attachment 1 to Dkt. # 312 at 2. He goes on to assert that trial counsel was "admonished by this Honorable Court for his contemptible behavior and outlandish remarks . . . ." Id. The government responds that a review of the trial transcript sections cited by Singleton show that Singleton's trial counsel was not ineffective and that, irregardless, Singleton cannot satisfy the prejudice prong of Strickland because of the overwhelming evidence against him.

Upon review of the contested portions of the trial transcript, the undersigned concludes that Singleton's trial counsel did not perform unreasonably. Rather, Bragg attempted to impeach a government witness by highlighting inconsistencies in the details of the witness's testimony.

See Dkt. # 244 at 37-38; 56-58.  Similarly, Singleton did not attempt to inflame one of the witnesses.  Rather, he attempted to uncover motives for an adverse witness's testimony, including that she might help her husband or avoid prosecution.  Dkt. # 285 at 93-96.  Finally, Singleton's objections were not nonsensical and he was not admonished by the court.  Id. at 98. Though the court did not always sustain Singleton's trial objections, the objections were not outside the bounds of those frequently raised at trial.  See Id. at 106.  In short, a review of the records reveals that trial counsel did not act unreasonably.

In the alternative, the undersigned finds that even if Singleton's counsel did act unreasonably, Singleton has not established the prejudice prong of Strickland.  Singleton has not made any showing that had Bragg acted differently, Singleton was not have been convicted. Rather, the trial record suggests that Singleton was convicted because of a great deal of incriminating evidence.  Thus, the undersigned recommends that this claim be dismissed.

2.  Admissibility of Detective Robert Lincoln's Testimony

Singleton argues that testimony given by Detective Robert Lincoln violated his constitutional rights because it constituted double jeopardy and prosecutorial misconduct.  The government argues that this claim is procedurally defaulted and that in the alternative it fails on its merits, noting that the Fourth Circuit previously decided this issue.

The contested testimony concerned a drug sting conducted in 2003.  Detective Lincoln testified that Debbie Singleton tried to buy methamphetamine and made several statements indicating that Jonathan Singleton was involved in the drug trade.  Dkt. # 284 at 106-125.  Bragg objected to the testimony on the grounds that it constituted hearsay insofar as it implicated Jonathan Singleton.  Id. at 111-113.  The court denied that motion.  Id. at 113.

The Fourth Circuit has already held that the district court did not abuse its discretion in admitting the testimony of Detective Lincoln under the Federal Rules of Evidence. <u>Singleton</u>, 232 F.App'x at 315-16. Because this issue has been fully considered and decided by the court of appeals, Singleton cannot re-litigate that issue before the district court under § 2255. <u>Boeckenhaupt</u>, 537 F.2d at 1183.

Singleton alternatively claims that trial counsel used the wrong objection and that Bragg should have argued that the admission of Detective Lincoln's testimony constituted double jeopardy. This ineffective assistance of counsel claim fails, because Singleton's preferred grounds of objection misstate the law. Singleton did not suffer from double jeopardy, because he was not tried for the same offense in federal court twice. Any prior state prosecution would not constitute double jeopardy. The federal government is a separate sovereign from the states and, as a matter of federal law, a trial in state court and a subsequent trial in federal court do not constitute double jeopardy. <u>Heath v. Alabama</u>, 474 U.S. 82, 88-89 (1985); <u>Oregon v. Kennedy</u>, 456 U.S. 667, 671-73 (1982). As such, the government's decision to use Detective Lincoln's testimony did not constitute prosecutorial misconduct or violate Singleton's due process rights. Thus, the undersigned recommends that this claim, too, be dismissed.

### 3. Ineffective Assistance of Counsel on Direct Appeal

Singleton argues that counsel was ineffective on direct appeal for (a) the manner in which he challenged the Lincoln testimony, (b) not asking Singleton's permission to file an appeal, and (c) failing to promptly notify defendant of the Fourth Circuit's denial of his direct appeal thereby

depriving him of the opportunity to request an <u>en banc</u> hearing.  Upon review, the undersigned recommends that these claims be dismissed.

### A. Prior Bad Acts

 Singleton argues that his counsel missed a key argument on appeal, by arguing evidence of a prior drug sale was a prior bad act.  Singleton reasons that because he was not convicted of that prior drug sale, it could be not be a prior bad act.  Instead, Singleton argues the crux of the challenge should have been that the evidence was unreliable because he was not convicted.[2]

Singleton's counsel did not act unreasonably.  Prior bad acts, for the purposes of the Federal Rules of Evidence, need not have resulted in a conviction in order to be "prior."  Federal Rule of Evidence 404(b) prohibits "[e]vidence of other crimes, wrongs, or acts . . . ."  That this includes "wrongs or acts" in addition to "crimes" demonstrates that a prior conviction is not required for challenged evidence to fall within the scope of Rule 404(b).

In the alternative, Singleton does not have a constitutional right to dictate the particulars of every claim upon appeal.  <u>Jones</u>, 463 U.S. at 751.  Bragg selected what he believed were non-frivolous grounds for appeal, thereby using his professional judgment.  As such, the undersigned recommends that this claim be denied.

### B. Permission to Appeal

Singleton claims that his counsel was ineffective because counsel failed to follow his specific command not to file an appeal without first consulting with Singleton.  He testified that

---

[2]  At trial, Bragg objected to the admission of Detective Lincoln's testimony as impermissible evidence of a prior bad act.  Dkt.# 285 at 122-23.  The court denied that motion.  <u>Id.</u> at 123.  Singleton's counsel appealed this decision to the Fourth Circuit, arguing that the material was inadmissible because it was a prior bad act that was not part of the charged conspiracy, and because the evidence was unreliable.  Appellant's Opening Brief at *16-18, <u>United States v. Singleton</u>, 06-4326(L), 2007 WL 3670610 (4th Cir., Nov. 22, 2006).

he did not learn that Bragg had filed a direct appeal on his behalf until a third party notified him. In contrast, Bragg testified that Singleton made it clear he wished to appeal. On balance, the undersigned finds Bragg's testimony more credible than Singleton's claim that he instructed Bragg to check with him before filing an appeal. Accordingly, the undersigned finds that Bragg did not act unreasonably and recommends that this claim be dismissed.

### C. Failure to Notify of Fourth Circuit Decision

Finally, Singleton claims that counsel was ineffective for failing to timely inform him that the Fourth Circuit had denied his claim and that he was prejudiced by the failure to request an en banc rehearing of his case.[3] He claims that he would have had better chances for success in an en banc hearing than before the Supreme Court. Bragg acknowledged that he failed to timely notify Singleton of the Fourth Circuit's decision, but said that he did not believe that the case qualified for an en banc hearing because the panel decision was 3-0 and he could not point to any conflicting Fourth Circuit decisions. Bragg stated that he filed for a writ of certiorari from the United States Supreme Court, but that was denied.

Singleton cannot establish ineffective assistance of counsel because he cannot show a probability that he would have received an en banc hearing. Indeed, the Federal Rule of Appellate Procedure 35(a) provides that en banc review is for cases of "exceptional" importance or where further decision is required to create uniformity in a circuit's law. Singleton has not

---

[3] The Fourth Circuit held in United States v. Poindexter, 492 F.3d 263, 268-72 (4th Cir. 2007), that counsel is ineffective if counsel fails to file an appeal where specifically directed to, or if counsel fails to consult with a defendant regarding appeal where a rational defendant would wish to appeal. The undersigned is not aware of any law extending Poindexter to en banc review. However, even if it were, counsel did not act unreasonably as Singleton did not specifically request en banc review. Further, counsel did not fail in a duty to consult because a rational defendant would not have requested en banc review given that Singleton's appeal did not meet the requirements set out under the Federal Rules of Appellate Procedure. Moreover, as is noted above, Singleton was not deprived of meaningful review, as Bragg sought review from the Supreme Court.

shown, and cannot show, that his case met either of these requirements. Singleton still received review of a <u>certiorari</u> petition, thus he still received review from the Federal system's highest court. Accordingly, the undersigned recommends that this claim be dismissed.

## 4. Admissibility of Testimony of Agent Peter Vainauska

Singleton argues that the district court's admission at trial of DEA Agent Peter Vainauska's statements violated Federal Rule of Criminal Procedure 11 and the Federal Rules of Evidence because it was a statement made in the course of plea negotiations. Additionally, Singleton argues that the statement violated his Fifth Amendment Right against self-incrimination.

At trial, counsel for defendants objected to the testimony of Agent Vainauska, but after reviewing the matter, the court overruled the objections. Dkt. # 285 at 97. The contested testimony was introduced during the government's direct examination of Agent Vainauska:

> Q. [Government] Did he make any statements concerning methamphetamine?
>
> A. [Agent Vainauska] The only statement I recall him making, I had asked him to cooperate, and he had, he had asked me if I wanted the big guy, the big man, and I told him that's why we were here, and he had asked me to promise that, you know, we'd get him in the prison system out of the state, and some leniency on his sentence, and I told him I wasn't in a position to make those promises.
>
> Q. [Government] Did he tell you who the big guy was, or big man was?
>
> A. [Agent Vainauska] At that time he asked for his attorney, and we ended the interview.

<u>Id.</u> at 113 (direct examination of Agent Vainauska). Singleton's counsel moved for a mistrial on the basis of this testimony and the court denied that motion. <u>Id.</u> at 119-20.

This issue was not raised on appeal and accordingly has been procedurally defaulted. To the degree Singleton claims that the procedural default should be excused because of ineffective assistance of counsel, his claim is unavailing. Counsel is not obligated to raise every non-frivolous issue on appeal. Bragg raised two issues that were the subject of trial objections. He used his professional judgment to winnow the issues. Accordingly, Singleton cannot establish unreasonable performance and prejudice to excuse the procedural default as to this issue.

Moreover, Singleton has not demonstrated prejudice, i.e., that even had this testimony been excluded the outcome of the case would have been different. This testimony was a very small part of the incriminating evidence put forth by the government. Accordingly, the undersigned recommends that this claim also be dismissed.

## IV.

The Clerk is directed to transmit the record in this case to Honorable James P. Jones, United States District Judge. Plaintiff is reminded that pursuant to Rule 72(b), he is entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is directed to send copies of this Report and Recommendation to plaintiff.

Entered:  September 14, 2010.

_/s/ Michael F. Urbanski_

Michael F. Urbanski
United States Magistrate Judge